# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL NO. 1:16-CV-319-KDB

| | |
|---|---|
| **WESLEY LEON BURTON,** ) | |
|         **Plaintiff,** ) | |
| ) | |
|         vs. ) | **ORDER** |
| ) | |
| **ANDREW M. SAUL,**[1] ) | |
| **Commissioner of Social Security** ) | |
| ) | |
|         **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (Doc. No. 14) and Defendant's "Motion for Summary Judgment" (Doc. No. 17), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Supplemental Social Security Income ("SSI") and Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED; Defendant's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff's DIB and SSI applications filed on August 20, 2012 alleged disability onset of June 22, 1983, and were denied initially on December 11, 2012, and, upon reconsideration, on January 31, 2013. (Tr[2]. 26). Plaintiff later amended his alleged disability onset date to August

---

[1] Andrew M. Saul is now the Commissioner of Social Security and substituted as a party pursuant to Fed. R. Civ. P. 25(d).
[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

12, 2011, when vocational rehabilitation did an evaluation. (Tr. 26, 63). Plaintiff timely requested an administrative hearing, which was held on October 28, 2014. (Tr. 41-64). An Administrative Law Judge (ALJ) decision denying benefits was made on January 28, 2015.

Plaintiff appealed to Defendant's Appeals Council (AC), which on July 27, 2016 denied Plaintiff's request for review, thereby causing the ALJ's decision to become the "final decision" of the Commissioner. (Tr. 3-6). On November 5, 2018, the AC reviewed additional evidence, including a Medicaid disability decision, and concluded no change in its prior action was warranted. (Tr. 416). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g). Plaintiff filed the present action on September 28, 2016.

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the Social Security Act (SSA). (Tr.35). In reaching her conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. *Id.*; *see also* 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 34, Finding 6 and Tr. 61).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 12, 2011. (Tr. 28). The ALJ found Plaintiff to have the following severe impairments: "borderline intellectual functioning, polysubstance abuse, and a personality disorder. (Tr. 28, Finding 3). The ALJ also found, with explanation, that Plaintiff has the non-severe impairment of hypoxic/static encephalopathy. (Tr. 29). The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Administration's regulations. (Tr. 29-31). The ALJ examined the evidence of Plaintiff's impairments and made a finding as to the Plaintiff's Residual Functional Capacity (RFC). In pertinent part, the ALJ found the Plaintiff:

> has the [RFC] to perform a full range of work at all exertional levels, but… is limited to doing routine tasks and to following short, simple, non-detailed instructions, with no work requiring a production rate or demand pace. The claimant should have frequent but not continuous contact or interactions with co-workers, supervisors, and the public. The claimant should avoid work environments dealing with crisis situations, complex decision making or constant changes in routine. The claimant is able to concentrate and sustain attention for two hours at a time.

(Tr. 31, Finding 5). The ALJ detailed the evidence considered in formulating the RFC. (Tr. 31-34). The ALJ found the Plaintiff not disabled at Step Four of the sequential evaluation process

3

based upon the established RFC and the vocational expert's (VE) testimony that Plaintiff would be able to perform his past relevant work (PRW) as a groundskeeper, dishwasher, animal caretaker and cart pusher/bagger. (Tr. 34, Finding 6 and Tr. 61). Alternatively, at Step Five of the evaluation process, the ALJ, pursuant to VE testimony, found Plaintiff, given the limitations embodied in his RFC, would be able to perform jobs that existed in significant numbers in the national economy such as landscape laborer, laundry laborer and marker. (Tr. 61-62).

Plaintiff contends substantial evidence does not support the ALJ's finding that he can perform PRW. Plaintiff's Memorandum at 4-17. (Doc. No. 15). He also contends the ALJ's RFC finding was not supported by substantial evidence. *Id.* at 17-22. Plaintiff also contends the ALJ erred in failing to evaluate a 2011 assessment from psychologist Dr. Ervin S. Batchelor. *Id.* at 22-23. Lastly, Plaintiff claims the Appeals Council erred in denying review. *Id.* at 24-25.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also* Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v.

Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), *quoting* Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also* Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); *see also* Smith v. Schweiker, 795 F.2d at 345; *and* Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a disability within the meaning of the Act since August 12, 2011, the amended alleged disability onset date.[3]

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

A. <u>Substantial Evidence Indicates Plaintiff Can Perform PRW</u>

Substantial evidence supports the ALJ's determination that plaintiff can perform his unskilled and semi-skilled PRW as a groundskeeper, dishwasher, animal caretaker, and cart pusher/bagger. (Tr. 34, Finding 6). During the hearing, the VE described the jobs of dishwasher and bagger as unskilled and groundskeeper and animal caretaker as semi-skilled. (Tr. 50). Having posed a hypothetical question to the VE with the established RFC described above (Tr. 60-61), the VE testified such a hypothetical person could perform all of Plaintiff's PRW. (Tr. 61). The Plaintiff had no objections to the VE's qualifications. (Tr. 59).

Furthermore, the Plaintiff's own testimony supports the ALJ's determination regarding PRW. Plaintiff testified he last worked in June 2012 for the Town of Beech Mountain doing outdoor maintenance. (Tr. 45). He used a blower to remove leaves and snow from sidewalks. *Id*. A work history report dated September 2012 indicates he performed this job from 2010 until August 27, 2012. (Tr. 261). When asked by the ALJ why he is not working now, Plaintiff replied "basically it's kind of hard to find a job out there." (Tr. 47). He then clarified that he has personal difficulties working. (Tr. 48). However, Plaintiff told Dr. Broman-Fulks that he "last worked for the Town of Beech Mountain, where he was employed as an 'outdoor maintenance person'" and that "his employment ended in August 2012 when he laid off due to funding." (Tr.372). Plaintiff's father even testified that the Town "let him go in August because winter time was coming, and they said they'd hire him back the next year but they didn't." (Tr. 52).

Plaintiff's counsel contends that Plaintiff is unable to meet the mental demands of PRW. Plaintiff was diagnosed with having borderline intellectual functioning and a personality disorder in vocational rehabilitation evaluation by Ms. Marsha Walsh dated September 29, 2008. (Tr. 340-

6

341). He was also diagnosed with same on the same date by Daniel Platt, another social worker from the New River Area Board of Mental Health Department. (Tr. 362, 368-369).

However, the ALJ pointed out that Plaintiff was able to perform substantial gainful activity (SGA) thereafter in various jobs despite these impairments. (Tr. 32). The ALJ noted "the claimant testified he was terminated from a job because he did not get along with the new management, and not because his medical conditions prevented him from being able to perform job duties." *Id*. The ALJ went on to observe, "the claimant was able to comprehend instructions well, that the claimant persisted at exam tasks" and "claimant also exhibit (sic) good memory functions and intact reasoning skills." *Id*. The ALJ noted, "a mental status examination revealed normal attire, normal movements, an appropriate affect, a normal mood, normal thought content, intact orientation, normal memory functions, and fair insight. No signs of perceptual disturbances detected." (Tr. 33).

The ALJ noted that the medical records after the amended disability onset date also support that Plaintiff can do PRW. (Tr. 32). Neurologist Dr. Jeffrey Crittendon performed a neurological consultative evaluation in October of 2011 and noted the Plaintiff was working in outdoor maintenance and seemed to be doing a good job. *Id*. The ALJ found this examination suggested the Plaintiff's medical conditions did not preclude work activity. *Id*. In reviewing Dr. Crittendon's examination findings, the ALJ wrote:

> Dr. Crittendon also reported the claimant had no new or progressive neurological symptoms, and that the claimant had no complaints, which indicated the claimant was stable. Dr. Crittendon further noted the claimant's musculoskeletal and psychological/psychiatric were negative, evidencing the claimant was basically stable mentally and physically. In addition, the claimant exhibited alertness, normal expressive/receptive language skill, an appropriate demeanor, appropriate responses to most questions, an intact gait with no more than a hit (sic) of occasional left leg circumduction, and normal motor strength/tone/bulk (except for merely a

hint of a left arm drift). Dr. Crittendon's objective observations indicated the claimant was able to function mentally and physically. Dr. Crittendon diagnosed the claimant with a mild static encephalopathy that was perhaps on the basis of hypoxic/ischemic encephalopathy at birth. (Tr. 33).

The ALJ also commented that non-examining State agency consultants opined that Plaintiff was able to perform simple tasks with short instructions in a stable work setting that is not highly production oriented or socially demanding. (Tr. 34).

B. The ALJ's RFC determination is supported by substantial evidence

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R §§ 404.1546(c) & 416.946(c). In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. *See* Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865-66 (4th Cir. 2014). In making that assessment the ALJ, however, must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling (SSR) 96-8p at *2. A "function-by-function" narrative assessment is not an absolute requirement to be applied in all circumstances.

Furthermore, it is the claimant's burden to establish how any medically determinable impairments affect his functioning. *See* 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion…to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation)("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC.") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2012). Aff'd, 487F. App'x795 (4th Cir. Nov. 6, 2012). Plaintiff has failed to meet that burden.

Plaintiff erroneously cites to Mascio v. Colvin, 780 F33d 632 (4th Cir. 2015), as a basis for remand. The ALJ complied with Mascio. An ALJ may satisfy the Mascio "function-by-function" analysis requirement by referencing a properly conducted analysis of State agency medical consultants. *See* Settlemyre v. Colvin, No.5:14-cv-00199-MOC, 2015 WL 5457950, at *4 (W.D.N.C. Sept. 16,2015); Linares v. Colvin, No. 5:14-cv-00120, 2015 WL 4389533 at *3 (W.D.N.C. July 17, 2015)("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the state agency consultant, the ALJ's function-by-function analysis complied with SSR 96-8p.) In formulating the RFC, the ALJ considered, and relied upon, the opinions and analyses of the State agency medical consultants.

C. The ALJ did not err in failing to evaluate a 2011 assessment from psychologist Dr. Ervin S. Batchelor

Dr. Batchelor's assessment is neither relevant nor material. It was made before Plaintiff's alleged disability onset. At that time, Dr. Batchelor opined that plaintiff was not capable of gainful employment. (Tr. 403). Not only was Dr. Batchelor's examination and conclusion made prior to Plaintiff's alleged disability onset, it failed to mention the Plaintiff's actual employment by the Town of Beech Mountain. A work history report dated September 2012 indicates Plaintiff performed that job from 2010 until August 27, 2012. (Tr. 261).

D. Appeals Council did not err in denying review

Plaintiff argues that the AC erred in refusing to grant review in this case (Tr. 3-6, 416) by failing to consider mostly "remote in time" evidence submitted to it and not previously submitted during the administrative review process. At the AC level, if the claimant submits additional evidence, the AC will grant the claimant's request for review if, in addition to meeting several other requirements, there is a reasonable probability that the additional evidence would change the

outcome of the decision. 20 CFR 404.970(a)(5), (b), 416.1470(a)(5), (b). The Court finds that the evidence submitted to the AC does not show a reasonable probability that it would change the outcome of the case; remand is not warranted.

First, the disability regulations do not require the AC to articulate its rationale for denying a request for review. *See* Meyer v. Astrue, 666 F3d 700, 705 (4th Cir. 2011). Second, Plaintiff amended his alleged disability onset date to August 12, 2011. (Tr. 26). The evidence submitted to the AC from Lake Primary Care Associates dated January 5, 1989 to September 22, 2003, and from the North Carolina Division of Vocational Rehabilitation dated April 16, 1996 to October 20, 2008, is remote in time and not relevant. Finally, the North Carolina Medicaid decision dated November 25, 2015 (Tr. 417-420) was mainly based upon a vocational rehabilitation assessment completed by Dr. Ervin Batchelor in 2011 (Tr. 394-404) and Dr. Joshua Broman-Fulks' consultative examination in October of 2012.[4] (Tr. 374). The ALJ already had this underlying Medicaid decisional evidence before her, thus the Court feels no reasonable probability exists that it would change the outcome of the decision.

---

[4]Dr. Broman-Fulks' consultative examination generally supports the ALJ's conclusion regarding Plaintiff's RFC.

## IV. CONCLUSION

For these reasons, Plaintiff's "Motion for Summary Judgment" (Doc.No. 14) is **DENIED**; Defendant's "Motion for Summary Judgment" (Doc. No. 17) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**　　　　　　　　　Signed: September 5, 2019

Kenneth D. Bell
United States District Judge